**Luis D. VILLEGAS, Petitioner—
Appellant,**

v.

**Susan YEARWOOD, Warden of
Susanville State Prison; et al.,
Respondents—Appellees.**

No. 04–55825.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2005.

Decided April 22, 2005.

James S. Bisnow, Esq., Los Angeles, CA, for Petitioner–Appellant.

Paul C. Ament, Robert C. Schneider, Esq., AGCA—Office of The California Attorney General, Los Angeles, CA, for Respondents–Appellees.

Before: HALL, WARDLAW, and PAEZ, Circuit Judges.

MEMORANDUM *

Luis D. Villegas appeals the district court's denial of his habeas petition, claim-

---

* This disposition is not appropriate for publica-

tion and may not be cited to or by the courts

ing that the state Court of Appeal's conclusion that he was not prejudiced by his counsel's deficient performance was objectively unreasonable. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we reverse.

Federal courts may grant habeas relief if the state court's adjudication of the claim "was contrary to, or an unreasonable application of, clearly established Federal law ... [or] that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Moreover, when a state court fails to correctly "identif[y] the governing legal rule," *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), we need not defer to the state court's resulting determination. *See Williams v. Taylor,* 529 U.S. 362, 395–99, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (conducting a de novo review of the state court's prejudice determination after noting that the state court mischaracterized the appropriate legal rule); *Taylor v. Maddox,* 366 F.3d 992, 1001 (9th Cir.2004) ("Obviously, where the state court's legal error infects the fact-finding process, the resulting factual determination will be unreasonable and no presumption of correctness can attach to it."). A state court makes an unreasonable determination of the facts when it misapprehends or misstates the record with respect to a material factual issue that is central to petitioner's claim or when it "has before it, yet apparently ignores, evidence that supports petitioner's claim." *Id.* (citations omitted).

Each court to review Villegas's ineffective assistance of counsel claim has concluded that his counsel performed deficiently by failing to advise him that, if he was convicted, he would face a sentence of life without parole. Each court has found

a lack of prejudice, however, and rejected his ineffective assistance claim. We disagree for two reasons that have somehow escaped notice in prior reviews: (1) the state Court of Appeal applied an incorrect legal standard for the prejudice determination; and (2) the state court ignored evidence that Villegas was unaware of the *mandatory* nature of the sentence he faced.

Under clearly established federal law, to show prejudice a petitioner must show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (holding that the *Strickland* prejudice inquiry examines whether there is a reasonable probability that counsel's deficient performance affected the outcome of the plea process).

The California Court of Appeal imposed a more exacting prejudice standard than that identified by the United States Supreme Court. Rather than requiring Villegas to show that, absent his counsel's erroneous advice, there was a *reasonable probability* that he would have accepted the plea agreement, the California Court of Appeal remanded to the state superior court with instructions that it consider whether, absent his counsel's deficient performance, Villegas *would have accepted* the plea agreement. We therefore review the state's prejudice determination de novo.

It is undisputed that neither Villegas nor his trial lawyer knew that life without the possibility of parole would be mandatorily imposed if the jury convicted him,

of this circuit except as provided by Ninth Circuit Rule 36–3.

and that the judge had no discretion to strike the special circumstance. Villegas's decision to go to trial while ignorant of the consequences "does not warrant the inference that there is no reasonable probability that he would have accepted the government's offer had his attorney informed him" of the import of that offer. *United States v. Blaylock,* 20 F.3d 1458, 1467 (9th Cir.1994). Rather, Villegas consistently and repeatedly testified that he would have accepted the prosecution's offer of 15 years to life if he had known that he faced a mandatory term of life without parole. Villegas testified that he trusted his lawyer, and that he relied on his lawyer's advice in rejecting the plea offer.

Villegas's counsel corroborated this testimony, stating that, in evaluating the plea offer with Villegas, he emphasized that the choice was between 15 years to life and 25 years to life. Counsel further testified that if he had been aware that the life sentence Villegas faced would be mandatory upon conviction, he would have advised Villegas to take the plea offer. Counsel believed that Villegas, an 18–year–old with no experience in the criminal justice system, would have heeded this advice. *See Riggs v. Fairman,* 399 F.3d 1179, 1183 (9th Cir.2005).

Even had the state court applied the correct law, its decision was based on an unreasonable determination of the facts when it failed to take account of the undisputed fact that Villegas did not know that he was facing a mandatory life without parole sentence. The court concluded that Villegas was not prejudiced because he "knew ... life without the possibility of parole to be a possibility"; it did not independently consider that Villegas did not know that if he was convicted life without parole was the *only* possibility. Both the state court and, later, the district court recognize the significant difference between a *possible* sentence of life without parole, and a *mandatory* sentence of life without parole.

Because the courts missed this crucial distinction, their reliance on several facts was misplaced. First, the "Livesay" form did not indicate that the life without parole sentence would be mandatory, and thus Villegas's signature on the form indicates only that he knew that the sentence was possible. Second, while Villegas's first counsel told Villegas that life without parole was a "possibility," counsel admitted at the evidentiary hearing that he didn't think the mandatory nature of that sentence was ever discussed with Villegas. Finally, the state and district courts failed to take account of the fact that, at trial, the judge confirmed Villegas's misconception that life without parole was not mandatory. The judge stated that, "the tragedy there is insofar as Mr. Villegas is concerned is that any way you cut it, he becomes a principal, aiding and abetting, and winding up being a principal could wind up also getting him convicted of first-degree and doing 25 to life."

We conclude that Villegas demonstrated a reasonable probability that he would have accepted the prosecution's offer of 15 years to life, had he been properly informed of the consequences of proceeding to trial. We therefore reverse the district court's denial of habeas relief and remand with the instruction that the district court issue a writ of habeas corpus and direct the government to release Villegas unless it elects, within a reasonable time, to reinstate its original 15 years to life plea offer. *See Blaylock,* 20 F.3d at 1468–69 ("[W]here, as here, the defendant was deprived of the opportunity to accept the plea offer, putting him in the position he was in prior to the Sixth Amendment violation ordinarily will involve reinstating the

original offer."); *Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir.2003).

REVERSED and REMANDED.